UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

220 COSTER, LLC and B&M LINEN CORP. d/b/a MIRON & SONS LINEN,

Plaintiffs,

vs.

MASSACHUSETTS BAY INSURANCE COMPANY,

Defendant.

Index No. 1:14-cv-07027-AJN

**FIRST AMENDED COMPLAINT**

**DEMAND FOR JURY TRIAL**

## FIRST AMENDED COMPLAINT

Plaintiffs 220 Coster LLC ("Coster") and B&M Linen Corp. d/b/a Miron & Sons Linen ("B&M") (collectively "Plaintiffs" or the "Policyholders"), as their First Amended Complaint against Massachusetts Bay Insurance Company ("Defendant" or "Hanover"), allege as follows:

## PRELIMINARY STATEMENT

1. This action for damages arises out of the failure and refusal of Hanover to honor its obligations under two commercial insurance policies that Hanover sold to the Policyholders. Hanover is liable to the Policyholders for losses, including property damage and the loss of business income, suffered by the Policyholders as a result of a four-alarm fire that destroyed the Policyholders' business and property.

## PARTIES

2. Plaintiff 220 Coster LLC is incorporated in New York and has its principal place of business in New York.

Case 1:14-cv-07027-AJN Document 20-1 Filed 01/12/15 Page 3 of 19

3. Plaintiff B&M Linen Corp. d/b/a Miron & Sons Linen is incorporated in New York and has its principal place of business in New York.

4. Defendant Hanover is a corporation organized under the laws of New Hampshire and has its principal place of business in Massachusetts.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiffs are incorporated in New York and have their principal places of business in New York, and Defendant is incorporated in New Hampshire and has its principal place of business in Massachusetts, and the matter in controversy exceeds the sum or value of $75,000.

6. Venue is proper in the Southern District of New York, pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims herein asserted occurred in this District, a substantial part of property that is the subject of the action is situated in this District, and Hanover conducts business in the District.

7. Personal jurisdiction is proper in New York because, at all times material hereto, Hanover operated, conducted, engaged in, or carried on a business or business venture in this state, there is the requisite nexus between the business and this action, and because Hanover engages in substantial and not isolated activity within New York.

8. On or about July 2014, the Policyholders commenced an action in the Supreme Court of the State of New York, County of Bronx styled *220 Coster LLC, B&M Linen Corp d/b/a Miron & Sons Linen v. Massachusetts Bay Insurance Company*, Index No. 23494/2014 (the "State Court Action").

9. On or about August 2014, Hanover removed the State Court Action to this Court.

10. In Hanover's Notice of Removal, Hanover conceded that jurisdiction and venue are proper in this Court.

## BACKGROUND

### *Coster and B&M*

11. B&M operates a laundry and linen services business in the New York City metropolitan area.

12. Coster owns, rents out, and operates 220 Coster Street, Bronx, NY 10474 (the "Complex"), a large industrial complex out of which B&M operated its laundry and linen services business.

### *Fire Destroys the Policyholders' Business and Property*

13. On or about July 30, 2012, the Complex was heavily damaged by fire.

14. Following the fire, governmental authorities barred access to the Complex until such time as samples could be taken and the investigation regarding the fire could be completed.

15. At the same time, Hanover also wanted to conduct an investigation of the cause and origin of the fire. To that end, Hanover agreed to permit the Policyholders to use a contractor to shore up the structure of the Complex to allow Hanover to investigate and stated that it would pay the reasonable cost to accomplish this task.

16. Accordingly, at the request of Hanover, the Policyholders commenced work to remove debris, shore up the Complex, and conduct asbestos abatement in the limited area where sampling was to take place.

17. Governmental authorities took samples in the area on or about September 17, 2012.

18. In or around January 2013, it was reported that the samples came back negative and that there was no evidence of accelerants in connection with the fire.

19. The fire damage made it impossible for Coster to continue operating and renting out the Complex and for B&M to continue its lucrative laundry and linen services business.

20. The Policyholders' lost substantial business revenue as a result of the fire.

21. The Policyholders' total loss exceeded $15,000,000 in lost property and equipment and lost revenue.

***The Insurance Policies***

22. During the periods pertinent to the instant dispute, the Policyholders purchased two insurance policies from Hanover (the "Policies") to which the Policyholders are both listed as Named Insureds on both Policies.

***The Business Personal Property Policy***

23. Hanover sold a business and personal property insurance policy to B&M, policy number ZDY 8924277 01 (the "BPP Policy") with a policy period of November 10, 2011 to November 10, 2012. A true copy of the BPP Policy is attached hereto as Exhibit A.

24. The BPP Policy lists 220 Coster LLC as an Additional Named Insured on the "Schedule of Additional Interest." *See* Exhibit A at B&M000003.

25. The Complex is listed on the BPP Policy's schedule of "Locations of All Premises You Own, Rent, or Occupy" and is therefore an insured location under the BPP Policy. *See* Exhibit A at B&M000003.

Case 1:14-cv-07027-AJN Document 20-1 Filed 01/12/15 Page 6 of 19

26. The BPP Policy provides various types of coverage to the Policyholders for Covered Causes of Loss, including any loss or damage caused by fire. *See* Exhibit A at B&M000005, B&M000019.

*Property Coverage*

27. The BPP Policy provides coverage for "direct physical loss of or damage to [the Complex] caused by or resulting from any Covered Cause of Loss" including fire. *See* Exhibit A at B&M000039.

28. This coverage extends to, among other things, "completed additions; fixtures, including outdoor fixtures; permanently installed machinery and equipment, [and] personal property." *See* Exhibit A at B&M000039.

29. The BPP Policy provides $6,777,007.00 in coverage for the Complex's contents for any "Covered Cause of Loss" including fire. *See* Exhibit A at B&M000005, B&M000019.

*Debris Removal Coverage*

30. The BPP Policy also provides "Debris Removal" Coverage. *See* Exhibit A at B&M000082.

31. Under this coverage, Hanover is obligated to pay the Policyholders' "expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period" up to $25,000. *See* Exhibit A at B&M000041, B&M000082.

*Newly Acquired Property Coverage*

32. The BPP Policy also provides coverage for: "Business personal property, including such property that [the Policyholders] newly acquire, at any location [they]

acquire other than at fairs, trade shows or exhibitions; [b]usiness personal property, including such property that [the Policyholders] newly acquire, located at [their] newly constructed or acquired buildings . . . ; or [b]usiness personal property that [the Policyholders] newly acquire, located at the described premises." *See* Exhibit A at B&M000083.

33. Hanover is obligated to pay up to $500,000 under the Newly Acquired Property Coverage. *See* Exhibit A at B&M000083.

*Ordinance or Law Coverage*

34. The BPP Policy provides $50,000 of coverage to the Policyholders for "the loss in value of the undamaged portion of the [Complex] as a consequence of enforcement of an ordinance or law that requires demolition of undamaged parts of the same [Complex]." *See* Exhibit A at B&M000080, B&M000088.

35. The Ordinance or Law Coverage also requires Hanover to pay "the cost to demolish and clear the site of undamaged parts of the same building, as a consequence of enforcement of an ordinance or law that requires demolition of such undamaged property." *See* Exhibit A at B&M000088.

36. The Ordinance or Law Coverage also requires Hanover to pay the "increased cost to: repair or reconstruct damaged portions of [the Complex]; and/or reconstruct or remodel undamaged portions of that building, whether or not demolition is required; when the increase cost is a consequence of enforcement of the minimum requirements of the ordinance or law." *See* Exhibit A at B&M000088.

*Business Income Coverage*

37. The BPP Policy provides $1,200,000 in coverage for lost business income for any "Covered Causes of Loss" including fire. *See* Exhibit A at B&M000005, B&M000019, B&M000029-30.

38. Under the Business Income Coverage, Hanover agreed to cover:

> [T]he actual loss of Business Income [sustained by the Policyholders] due to the necessary 'suspension' of [the Policyholders'] 'operations' during the 'period of restoration.' The 'suspension' must be caused by direct physical loss of or damage to property at premises that are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

*See* Exhibit A at B&M000029.

39. "Business Income" means Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred and continuing normal operating expenses incurred, including payroll. *See* Exhibit A at B&M000029.

40. "Operations" means, the Policyholders' "business activities occurring at the described premises; and [t]he tenantability of the described premises." *See* Exhibit A at B&M000037.

41. The "Period of Restoration" means the period of time that "[b]egins 72 hours after the time of direct physical loss or damage for Business Income Coverage; or [i]mmediately after the time of direct physical loss or damage for Extra Expense Coverage. The "Period of Restoration" "[e]nds on the earlier of: The date when the property should be repaired, rebuilt or replaced with reasonable speed and similar quality; or [t]he date when business is resumed at a new permanent location." *See* Exhibit A at B&M000037.

42. "Suspension" means, "[t]he slowdown or cessation of [the Policyholders'] business activities; or [t]hat a part or all of the described premises is rendered untenantable." *See* Exhibit A at B&M000037.

*Extra Expense Coverage*

43. The BPP Policy also provides Extra Expense Coverage. *See* Exhibit A at B&M000029.

44. Extra Expense means "necessary expenses [the Policyholders] incur during the 'period of restoration' that [they] would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss." *See* Exhibit A at B&M000029.

45. Hanover will pay Extra Expense (other than the expense to repair or replace property) to: "(1) Avoid or minimize the 'suspension' of business and to continue 'operations' at the described premises . . . [or] (2) minimize the 'suspension' of business if [the Policyholders] cannot continue 'operations.'" *See* Exhibit A at B&M000029.

***The Building Policy***

46. Hanover also sold a building insurance policy to Coster, policy number ZDY 9309229 00 (the "Building Policy") with a policy period of September 14, 2011 to September 14, 2012. A true copy of the Building Policy is attached hereto as Exhibit B.

47. The Declarations Page of the Building Policy lists both entities as Named Insured as follows:

**Named Insured and Address:**

220 COSTER LLC
B AND M LINEN

220 COSTER STREET
BRONX NY 10474 10474

*See* B&M000121.

48. The Complex is listed on the Building Policy's schedule of "Locations of All Premises You Own, Rent, or Occupy" and is therefore insured under the Building Policy. *See* Exhibit B at B&M000123.

49. The Building Policy provides various types of coverage to the Policyholders for "Covered Cause[s] of Loss," including any loss or damage caused by fire. *See* Exhibit B at B&M000124, B&M000174.

*Property Damage Coverage*

50. The Building Policy provides coverage for "direct physical loss of or damage to [the Complex] caused by or resulting from any Covered Cause of Loss" including fire. *See* Exhibit B at B&M000150, B&M000174.

51. This coverage extends to, among other things, "completed additions; fixtures, including outdoor fixtures; permanently installed machinery and equipment, [and] personal property." *See* Exhibit B at B&M000150.

52. The Building Policy provides $5,000,000 in coverage for the Complex's contents for any "Covered Cause of Loss" including fire. *See* Exhibit B at B&M000124, B&M000174.

*Inflation Guard Coverage*

53. The Building Policy also provides Inflation Guard Coverage. *See* Exhibit B at B&M000163, B&M000229-30.

54. Pursuant to the Inflation Guard Coverage, Hanover "will pay either the actual cash value or replacement cost value, based on the valuation method shown in

the Declarations, of the damaged portion of the building at the time of loss, but not more than 115% of the Limit of Insurance for [the Complex]." *See* Exhibit B at B&M000230.

55. Accordingly, since the applicable Limit of Insurance under the Building Policy is $5,000,000, an additional $750,000 is available to cover the Complex.

*Ordinance or Law Coverage*

56. The Building Policy provides $500,000 of coverage to the Policyholders for "the loss in value of the undamaged portion of the [Complex] as a consequence of enforcement of an ordinance or law that requires demolition of undamaged parts of the same [Complex]." *See* Exhibit B at B&M000208, B&M000222.

57. The Ordinance or Law Coverage also requires Hanover to pay "the cost to demolish and clear the site of undamaged parts of the same building, as a consequence of enforcement of an ordinance or law that requires demolition of such undamaged property." *See* Exhibit B at B&M000222.

58. The Ordinance or Law Coverage also requires Hanover to pay the "increased cost to: repair or reconstruct damaged portions of [the Complex]; and/or reconstruct or remodel undamaged portions of that building, whether or not demolition is required; when the increase cost is a consequence of enforcement of the minimum requirements of the ordinance or law." *See* Exhibit B at B&M000222-23.

*Debris Removal Coverage*

59. The Building Policy also provides "Debris Removal" Coverage. *See* Exhibit B at B&M000152, B&M000211.

60. The Building Policy provides, in pertinent part that Hanover "will pay [the Policyholders'] expense to remove debris of Covered Property caused by or resulting

Case 1:14-cv-07027-AJN Document 20-1 Filed 12/15/14 Page 12 of 19

from a Covered Cause of Loss that occurs during the policy period" and provides "an additional $250,000 for debris removal expense" for "physical loss or damage to Covered Property." *See* Exhibit B at B&M000152, B&M000207, B&M000212.

61. The Building Policy also provides "Windblown Debris" Coverage. *See* Exhibit B at B&M000229.

62. The Building Policy provides, in pertinent part, that Hanover "will pay [the Policyholders'] reasonable expenses to remove the windblown debris (including trees) from [the Complex] if it is carried to the [Complex] from the premises of others by wind, during the policy period," not to exceed $2,500. *See* Exhibit B at B&M000229.

*Business Income Coverage*

63. The Building Policy provides $1,104,000 in coverage for lost business income for any "Covered Causes of Loss" including fire. See Exhibit B at B&M000124, B&M000165-66.

64. Under the Business Income Coverage, Hanover agreed to cover:

> [T]he actual loss of Business Income [sustained by the Policyholders] due to the necessary 'suspension' of [the Policyholders'] 'operations' during the 'period of restoration.' The 'suspension' must be caused by direct physical loss of or damage to property at premises that are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

*See* Exhibit B at B&M000165.

65. "Business Income" means Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred and continuing normal operating expenses incurred, including payroll. *See* Exhibit B at B&M000165.

66. "Operations" means, the Policyholders' "business activities occurring at the described premises; and [t]he tenantability of the described premises." *See* Exhibit B at B&M000173.

67. The "Period of Restoration" means the period of time that "[b]egins 72 hours after the time of direct physical loss or damage for Business Income Coverage; or [i]mmediately after the time of direct physical loss or damage for Extra Expense Coverage. The "Period of Restoration" "[e]nds on the earlier of: The date when the property should be repaired, rebuilt or replaced with reasonable speed and similar quality; or [t]he date when business is resumed at a new permanent location." *See* Exhibit B at B&M000173.

68. "Suspension" means, "[t]he slowdown or cessation of [the Policyholders'] business activities; or [t]hat a part or all of the described premises is rendered untenantable." *See* Exhibit B at B&M000173.

*Extra Expense Coverage*

69. The Building Policy also provides Extra Expense Coverage. *See* Exhibit B at B&M000165.

70. Extra Expense means "necessary expenses [the Policyholders] incur during the 'period of restoration' that [they] would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss." *See* Exhibit B at B&M000165.

71. Hanover will pay Extra Expense (other than the expense to repair or replace property) to: "(1) Avoid or minimize the 'suspension' of business and to continue 'operations' at the described premises . . . [or] (2) minimize the 'suspension' of

business if [the Policyholders] cannot continue 'operations.'" *See* Exhibit B at B&M000165.

***Hanover Fails to Honor its Obligations under the Policies***

72. As a result of the fire and the resulting losses, the Policyholders sought coverage under the Policies and provided Hanover with timely notice of its losses (the "Claim").

73. The Policyholders' losses are in excess of any applicable deductible.

74. The Policyholders' have complied with all of the terms of the Policies.

75. Despite timely receipt of the Claim in their Massachusetts office, access to the Complex and the result of the government's investigation, and acknowledgment that the Claim is an above-limits loss, Hanover has failed and refused to pay the full Claim. In addition, Hanover has failed to reimburse the Policyholders for the costs incurred in connection with the cause and origin work performed at Hanover's behest.

76. As a result of Hanover's failure and refusal from their Massachusetts office to, at the outset, timely pay any portion of the Claim, the Policyholders' reconstruction efforts were hindered and delayed and the Policyholders were unable to resume normal business operations.

77. To date, although Hanover, through their Massachusetts office, has since issued payment in partial satisfaction of the Claim, its continued failure and refusal to pay the remainder of the Claim has prevented the Policyholders from repairing and rebuilding the Complex, and resuming normal business operations.

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**

78. The Policyholders repeat and reallege the allegations set forth in paragraphs 1 through 77 as though fully set forth herein.

79. The Policies constitute valid contracts of insurance coverage between The Policyholders and Hanover, and the terms and conditions of the Policy have been triggered to provide coverage to the Policyholders.

80. The Policyholders have complied with all conditions and satisfied all obligations to the extent that they have not been waived or abrogated by Hanover's conduct, omissions or actions.

81. All insurance premiums due under the Policies have been paid, and thus, the Policyholders are rightfully entitled to the coverage benefits of the Policies.

82. Under the Policies, Hanover is obligated to pay for the losses sustained by the Policyholders.

83. Hanover has failed or refused to pay amounts due to the Policyholders under the Policies and therefore breached its obligations under the Policies.

84. Hanover has further breached its obligations under the Policies in failing to honor the nature and purpose of the Policies – to ensure that the Policyholders had the financial support necessary to sustain their business operations in the event disaster occurred - and in failing to consider evidence of coverage.

85. As a result of Hanover's breach of its obligations under the Policies, the Policyholders have been damaged in an amount to be determined at trial.

86. In addition, the Policyholders have incurred and continue to incur consequential damages – including but not limited to ongoing business interruption and

extra expenses – due to the Insurance Companies' wrongful, unjustified and unreasonable delay in issuing payment of amounts due and improper treatment of the Claim which has hampered the Policyholders' recovery efforts.

87. The consequential damages resulting from Hanover's breaches of the duty to act in good faith were within the contemplation of the parties as the probable result of a breach at the time prior to contracting.

88. As a result of its breaches, Hanover is liable to the Policyholders for damages for all covered losses incurred to date by the Policyholders or which may be incurred up to the applicable sublimits under the Policies and for consequential damages, together with costs and disbursements of this action including but not limited to reasonable attorneys' fees, costs, and pre- and post-judgment interest.

**SECOND CAUSE OF ACTION**
**(Unjust Enrichment)**

89. The Policyholders repeat and reallege the allegations set forth in paragraphs 1 through 88 as though fully set forth herein.

90. In order to determine the cause and origin of the fire at the Complex, Hanover required certain work to be performed.

91. Although Hanover was obligated to conduct the investigation and incur all such costs, the parties agreed to have the Policyholders' contractor do the work and incur the costs subject to Hanover reimbursing the Policyholders.

92. The Policyholders paid these costs and the work was performed.

93. The Policyholders expected to be reimbursed for these payments by Hanover.

94. Hanover benefited from the payments to the (engineer or inspector) by saving on the costs of inspection, and has failed to pay the Policyholders for same.

95. Given Hanover failure to make payment for the amount owed to the Policyholders with respect to the fees and costs of the cause and origin work, Hanover would be unjustly enriched to the Policyholders' detriment unless judgment is entered against them for the full amount paid by the Policyholders for the cause and origin work.

96. By reason of the foregoing, the Policyholders are entitled to judgment against Hanover for unjust enrichment in an amount to be determined at trial, together with costs and disbursements of this action including but not limited to reasonable attorneys' fees, costs, and pre- and post-judgment interest.

**THIRD CAUSE OF ACTION**
**(Breach of the Duty of Good Faith and Fair Dealing)**

97. The Policyholders repeat and reallege the allegations set forth in paragraphs 1 through 96 as though fully set forth herein.

98. Hanover's dilatory tactics and the improper handling of the claim through the Massachusetts office have caused unnecessary damages to the Policyholders.

99. Given Hanover's conduct and actions in Massachusetts, Hanover breached its duty of good faith and fair dealing by amongst other things:

- Unjustifiably and unreasonably delayed issuing payment of amounts due;
- Failing to act reasonably promptly upon communications with respect to the Policyholders' claim for coverage;
- Failing to effectuate a prompt, fair and equitable settlement of the Policyholders' claim when its coverage obligations were clear.

100. As a result of its breach of the duty of good faith and fair dealing, Hanover is liable to the Policyholders for damages, penalties to be assessed at double or treble

Case 1:14-cv-07027-AJN Document 20-1 Filed 01/12/15 Page 18 of 19

the damages sustained, costs, pre- and post-judgment interest, and reasonable attorneys' fees.

WHEREFORE, the Policyholders pray for judgment as follows:

1. On the First Cause of Action for breach of contract, a determination by this Court in favor of Plaintiffs:

(a) awarding money damages, including but not limited to, consequential damages, in an amount to be determined at trial, pre-judgment and post-judgment interest, costs and attorneys' fees; and

(b) requiring Hanover to pay the full amount of the Claim.

2. On the Second Cause of Action for unjust enrichment, a determination by this Court in favor of Plaintiffs:

(c) awarding money damages, in an amount to be determined at trial, pre-judgment and post-judgment interest, costs and attorneys' fees.

3. On the Third Cause of Action for breach of the duty of good faith and fair dealing, a determination by this Court in favor of Plaintiffs:

(a) awarding money damages, including but not limited to, consequential damages, in an amount to be determined at trial, penalties assessed at double or treble the damages sustained by the Policyholders, pre-judgment and post-judgment interest, costs and attorneys' fees; and

(b) requiring Hanover to pay the full amount of the Claim.

4. Such other and further relief as the Court deems just and proper.

Case 1:14-cv-07027-AJN Document 24 Filed 03/05/15 Page 18 of 18

**JURY DEMAND**

The Policyholders demand trial by jury on all issues so triable.

Dated: January 12, 2015

By: /s/ Peter A. Halprin

Finley T. Harckham, Esq.
Peter A. Halprin, Esq.
Bruce E. Strong, Esq.
ANDERSON KILL P.C.
1251 Avenue of the Americas
New York, NY 10020
Telephone: 212-278-1000

*Attorneys for Plaintiffs*